# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY CHANG, | ) Case No.: 1:11cv01572 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S ) SOCIAL SECURITY COMPLAINT |
| vs. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant | ) |

**BACKGROUND**

Plaintiff Larry Chang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

1

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed for SSI on August 21, 2006.  AR 12, 88.  He alleged disability since August 21, 2006, due to diabetes, arthritis and lower back pain.  AR 27, 107.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 55-57, 62-66, 67.  On August 14, 2009, ALJ Stephen W. Webster held a hearing.  AR 24-41.  ALJ Webster denied benefits on December 10, 2009.  AR 9-18.  On July 22, 2011, the Appeals Council denied review.  AR 1-5.

Hearing Testimony

ALJ Webster held a hearing on August 14, 2009.  Plaintiff appeared with his attorney, Robert Christenson.  Vocational expert ("VE") Linda M. Ferra also appeared and testified.  AR 12, 26.

*Plaintiff's Testimony*

Plaintiff was born in August 1950.  He is an immigrant from Laos and has a GED.  He had been able to care for his personal grooming, but recently needed his son's help to get dressed because of right hand pain.  He has a driver's license and drives his son's car.  He does not cook, do laundry, clean or work in the yard.  He watches television for about 10 or 20 minutes a day.  He does not read, does not use a computer and does not have hobbies.  He sometimes attends church.  AR 27-30, 35.

Plaintiff reported back problems, diabetes, headaches, vision problems and shoulder pain.  He sees Dr. Velasco once a month or more and takes medication.  The medicine does not cause any side effects.  He can sit about ten minutes, can stand about five minutes and can lift about 5 or 10 pounds.  He uses a cane that was not prescribed by a doctor.  He also lies down for one or

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

two hours a day because of his back pain. He was shot while in Laos and still has a bullet in his back, which causes pain. AR 31-35.

*Vocational Expert's Testimony*

The VE testified that Plaintiff's past work as a child care worker was semi-skilled, medium and his work as an outreach worker was semi-skilled, light. He had transferable skills in the light category. AR 36-38.

For the first hypothetical, the ALJ asked the VE to assume a person of the Plaintiff's age, education and work history. This person could lift 50 pounds occasionally, 25 frequently, and could sit, stand and/or walk six out of eight hours. The VE testified that this person could perform all of Plaintiff's past relevant work. AR 38-39.

For the second hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work history. This person could lift 20 pounds occasionally, 10 frequently, and could sit, stand and/or walk six out of eight hours. The VE testified that this person could perform Plaintiff's outreach job, but not the child care job. AR 39.

For the third hypothetical, the ALJ asked the VE again to assume a hypothetical person of Plaintiff's age, education and work history. This person could lift 20 pounds occasionally, 10 frequently, and needed to sit or stand at will. The VE testified that this person probably could perform Plaintiff's past relevant work as an outreach worker, alternating sitting and standing. AR 39.

For the fourth hypothetical, the ALJ asked the VE to assume the same factors as in hypothetical three, but also assume that this person would miss four or more days per month due to illness or injury. The VE testified that this person could not do any of Plaintiff's past relevant work and there would not be any work in the regional or national economy for this person. AR 39-40.

For the fifth hypothetical, Plaintiff's counsel asked the VE to assume a person of Plaintiff's age, education and work experience who needed to take lie down breaks during the day of one to two hours at unscheduled times. The VE testified that this person could not perform Plaintiff's past relevant work or any other work in the national economy. AR 40.

For the sixth hypothetical, Plaintiff's counsel asked the VE to assume a person that could lift 5 to 10 pounds, could sit 10 minutes at a time, could stand 5 minutes at a time and needed a cane to ambulate. The VE testified that such a person could not perform Plaintiff's past relevant work or any other work in the national economy. AR 40.

Medical Record

Beginning in 2005 through 2009, Dr. Oscar L. Velasco treated Plaintiff and diagnosed him with diabetes mellitus, arthritis, hypertension, headaches, and right shoulder pain. AR 144-51, 183-91, 203-10, 215-17. In May and October 2006, Dr. Velasco observed that Plaintiff was not compliant with his diabetes treatment. AR 147-48. Shortly thereafter, in November 2006, Dr. Velasco noted that Plaintiff's diabetes was not controlled. AR 146-47.

In October 2007, Dr. Velasco again reported that Plaintiff was not compliant with diabetes treatment and the following month, in November 2007, Plaintiff's diabetes was not controlled. In May 2008, Plaintiff was noted to have diabetes mellitus with mild neuropathy. In September 2008, Dr. Velasco again noted Plaintiff's diabetes also was not controlled. AR 184-85, 208, 209.

On June 1, 2007, Dr. Don Stover, O.D., an ophthalmologist, assessed Plaintiff with macular degeneration possibly related to diabetes as his blood sugar was often in the 200s. Plaintiff was referred for macular evaluation. AR 172.

On June 15, 2007, Dr. James A. Nowlan completed a consultative internal medicine evaluation. Plaintiff chiefly complained of diabetes, back pain and headaches. He told Dr. Nowlan that his diabetes was not controlled, but it had caused no problems. AR 153. On

examination, Plaintiff's coordination was normal and he did not require an assistive device. His motor strength was 5/5 throughout his upper and lower extremities and he had normal sensation. He was tender at a bullet entrance wound on his back and had slight back pain. Dr. Nowlan opined that Plaintiff could stand and walk for six hours in an eight-hour day, could sit without limitation and did not require an assistive device. He could lift 25 pounds frequently and 50 pounds occasionally. Plaintiff also had slight postural limitations, but no manipulative limitations. AR 154-56.

Lumbosacral spine x-rays completed on June 15, 2007, showed straightening of the normal lumbar lordosis. The x-rays also showed a metallic foreign body close to the spinous process of L2, which was probably of "no clinical significance." AR 152.

On July 3, 2007, B. J. Ginsburg, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without limitation. Plaintiff frequently could climb, balance, kneel and crawl and occasionally could stoop and crouch. Plaintiff did not have any manipulative, visual, communicative or environmental limitations. AR 157-61.

On September 12, 2007, Dr. Michael J. Henry of the Visalia Health Care Center Ophthalmology Clinic evaluated Plaintiff's complaints of blurry vision. On examination, Plaintiff had meibomian gland disease of the eyelid margins bilaterally, as well as blepharitis. Plaintiff had no sign of significant cataract in either eye and no sign of diabetic retinopathy. He had some changes in the retinal pigment epithelium of the maculae bilaterally, which might be associated with some mild retinal edema. Dr. Henry diagnosed bilateral maculopthy secondary to macular degeneration versus hereditary maculopathy. AR 171.

On January 4, 2008, Dr. H. Bindu SagarReddy completed a cardiac assessment.  Plaintiff had episodes of recurrent chest pressure and pain for seven or eight days.  His EKG was somewhat abnormal with T-wave changes, but he had normal-sized cardiac chambers, normal-sized left ventricle with excellent LV systolic function with normal ejection fraction and mild tricuspid regurgitation, insignificant.  AR 177-79.

On January 11, 2008, a pharmacologic stress spect report found normal left ventricle function, no evidence of increased post stress lung uptake, no evidence of myocardial perfusion, and no evidence of ischemia.  AR 173.

On March 27, 2008, Dr. Stover diagnosed Plaintiff with dry macular degeneration and mild elevated eye pressure in both eyes.  He did not believe that Plaintiff qualified for disability due to vision as of June 1, 2007.   AR 194-95.

On May 7, 2008, after reviewing Plaintiff's case, Dr. James V. Glaser, a state agency physician, assigned Plaintiff a medium residual functional capacity with slight postural limitations due to back pain with decreased range of motion.  AR 199-200.

On December 16, 2008 and March 12, 2009, Plaintiff complained of right shoulder pain and back pain.  AR 203-04.

On June 30, 2009, Dr. Velasco completed a Residual Functional Capacity Questionnaire form.  He reported seeing Plaintiff approximately 120 times and diagnosing him with diabetes, hypertension and peripheral neuropathy.  These impairments were expected to last at least 12 months and Plaintiff was not considered a malingerer.  Dr. Velasco opined that Plaintiff's pain or other symptoms were severe enough to interfere with attention and concentration frequently.  Plaintiff reportedly could maintain attention and concentration for 1 hour at a time.  Dr. Velasco believed Plaintiff was incapable of even "low stress" jobs because side effects from his Neurontin caused dizziness and he was unable to withstand stress.  Dr. Velasco opined that Plaintiff could walk 1-2 city blocks without rest or severe pain.  He could sit less than 2 hours

and could stand/walk less than 2 hours in an 8-hour working day. Plaintiff would need to walk every 30 minutes for 10 minutes at a time and would need a job which permitted shifting positions at will. He also would need to take unscheduled breaks every hour for 10 minutes each time. When sitting, his legs needed to be elevated to heart level 1-2 hours during an 8-hour workday. Plaintiff occasionally could lift 10 pounds and occasionally could twist, stoop, crouch and climb. He had significant limitations in repetitive reaching, handling or fingering. In an 8-hour day, he could handle objects 10% of the time, could manipulate objects 15% of the time and could reach 10% of the time. On average, Dr. Velasco believed Plaintiff would be absent from work due to his impairments or treatment more than four days per month. AR 211-15.

<u>ALJ's Findings</u>

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 21, 2006. The ALJ further found that Plaintiff had the severe impairments of arthritis, lumbar spine straightening and right arm pain. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, except he only could sit, stand, and/or walk for six hours out of an eight-hour workday. With this RFC, the ALJ concluded that Plaintiff could perform his past relevant work as an outreach worker. AR 14-18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520(a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since August 21, 2006; (2) has an impairment or a combination of impairments that is considered "severe" (arthritis, lumbar spine straightening and right arm pain) based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the

impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform his past relevant work as an outreach worker. AR 14-18.

Here, Plaintiff claims the ALJ erred by: (1) failing to adopt the opinion of treating physician, Dr. Velasco; (2) failing to find that his diabetes is a severe impairment; and (3) failing to find him credible.

## DISCUSSION

A. Treating Physician Opinion

In June 2009, Dr. Velasco opined that Plaintiff could maintain attention and concentration for 1 hour at time, could sit, stand or walk for less than 2 hours in an 8-hour work day, could lift 10 pounds occasionally and had significant limitations in repetitive reaching, handling or fingering. Dr. Velasco also opined that Plaintiff would be absent from work more than four days per month. AR 211-15. The ALJ assigned this opinion little weight. AR 17. Plaintiff argues that this was error.

Generally, a treating physician's opinion is entitled to "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the treating physician's opinion is not contradicted by another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). If the treating physician's opinion is contradicted by evidence in the record, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray,* 554 F.3d at 1228 (quoting *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

As Dr. Velasco's opinion was contradicted, the ALJ was required to provide specific and legitimate reasons for rejecting that opinion.  The ALJ complied with this requirement, finding that Dr. Velasco's opinion was not supported by the objective medical evidence and was not consistent with the record.  AR 15.  The ALJ noted that (1) there were no objective findings in the record showing arthritis, right arm limitations or back limitations (AR 16); (2) Plaintiff did not require an assistive device; (3) Plaintiff had no reported problems associated with diabetes or hypertension (AR 15, 154); and (4) Plaintiff was only being monitored or treated conservatively with medications (AR 16).  An ALJ may properly reject a treating physician's opinion that is inconsistent with the record as a whole.  *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *McCoy v. Astrue*, 2009 WL 1657445, *8 (C.D. Cal. Jun. 12, 2009) (ALJ provided specific and legitimate reasons for giving less weight to treating physician opinion that was unsupported by the record as a whole).

Plaintiff counters that Dr. Velasco's opinion is supported by the record and should have been adopted by the ALJ.  To demonstrate record support, Plaintiff first cites a June 15, 2007 x-ray of the lumbar spine, which revealed straightening of the neural lumbar lordosis and a metallic foreign body close to the spinous process of L2.  Opening Brief, p. 8; AR 152.  Plaintiff overlooks the following:  (1) the referenced x-ray was completed on the same date as the consultative examination, which revealed only slight limitations; (2) Dr. Velasco did not attribute any functional limitations to Plaintiff's lumbar straightening; and (3) the metallic foreign body was "probably of no clinical significance."  AR 152, 153-56, 211-15.

Plaintiff also references Dr. Velasco's progress notes identifying diabetes, peripheral neuropathy, arthritis and hypertension.  AR 210, 216.  While Dr. Velasco's notes identify various diagnoses, they do not identify any functional limitations and rarely document any symptomatic problems.  Plaintiff correctly points out that these progress notes occasionally indicated that his diabetes mellitus was not controlled.  AR 146, 208.  However, Plaintiff

reported to Dr. Nowlan that although his diabetes was not controlled, it had "caused no problems." AR 153. Additionally, other progress notes indicated that Plaintiff was not compliant with his diabetes treatment. AR 147-48, 185. Plaintiff fails to identify any record evidence supporting the extreme limitations identified by Dr. Velasco.

The ALJ also relied on the conflicting opinion of Dr. Nowlan, the consultative examiner, who opined that Plaintiff could stand and walk for six hours in an eight hour work day with slight postural limitations. AR 17. The contrary opinion of an examining source constitutes a "specific and legitimate reason" for rejecting opinion of a treating source. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Indeed, an ALJ may reject a treating source's opinion in favor of an examining source's opinion that is based on "independent clinical finding that differ from those of the treating physician." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."). In this case, Dr. Nowlan performed an independent examination of Plaintiff and conducted objective testing to ascertain his functioning. Based on the evaluation, Dr. Nowlan found Plaintiff to have normal coordination and sensation, with motor strength rated at 5/5. Plaintiff only had only slight back pain, with tenderness at the bullet entrance wound on his back. Dr. Nowlan therefore concluded that Plaintiff could stand and walk for six hours in an eight-hour day and did not require an assistive device. AR 154-56.

Based on the foregoing, the ALJ provided specific and legitimate reasons for assigning less weight to Dr. Velasco's opinion.

B. Step Two Impairments – Diabetes

At step two of the sequential evaluation, the ALJ found that Plaintiff's diabetes was a medically determinable, but not severe, impairment. AR 14. Plaintiff contends this was error.

An impairment is severe if it "significantly limits" a claimant's physical ability "to do basic work activities."  20 C.F.R. § 404.1520(c); *Smolen v. Chater*, 80 F.3d 1273, 1290 (1996). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching carrying or handling.  20 C.F.R. § 404.1521(b).

In finding Plaintiff's diabetes not severe, the ALJ considered treatment notes from November 2006 that Plaintiff's diabetes was "not controlled," but only a few months earlier, in 2006, the notes indicated that Plaintiff was non-compliant with his diabetes treatment.  AR 15, 147.  The ALJ also considered the consultative examiner's report that although Plaintiff's diabetes was not controlled, he had not reported problems associated with diabetes for three or four years.  AR 15, 153.

Plaintiff again suggests error because Dr. Velasco's treatment notes frequently indicated that Plaintiff's diabetes was not controlled, he had mild neuropathy and an eye examination showed minimal diabetic changes.  AR 146-47, 184, 196, 208, 209.   Plaintiff concludes, without more, that his "diabetes with peripheral neuropathy and some minimal diabetic changes" significantly limits his physical ability to do basic work activities.   Opening Brief, p. 9.

Contrary to Plaintiff's apparent suggestion, the mere presence of diabetes is not sufficient to establish a severe impairment.  As the ALJ noted, Plaintiff did not report any disabling symptoms from his diabetes to the consultative examiner.  AR 15, 153.  The record also reflects that Plaintiff was non-compliant with diabetes treatment on more than one occasion.  AR 147-48, 185.  Further, there is nothing in the treatment notes evidencing that Plaintiff's diabetes had any effect on his ability to work.

Based on the above, the ALJ's determination regarding diabetes at step two of the sequential evaluation is supported by substantial evidence.

### C. Credibility Determination

As a final argument, Plaintiff contends that the ALJ failed to provide sufficient reasons to discredit his testimony. The Court disagrees.

An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen*, 80 F.3d at 1283-84; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). Here, there was no affirmative evidence of malingering. Therefore, the ALJ was required to provide clear and convincing reasons to discredit Plaintiff's testimony.

In this instance, the ALJ rejected Plaintiff's testimony for a number of clear and convincing reasons. First, the ALJ discounted Plaintiff's testimony based on inconsistencies between his reported limitations and his conduct. An ALJ may properly consider inconsistencies in testimony or between testimony and conduct when weighing a claimant's credibility. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas*, 278 F.3d at 958-59. For example, the ALJ cited the inconsistency between Plaintiff's assertion that he had difficulty using his dominant right hand, but testified that he drove his son's car and managed his own grooming needs without difficulties. AR 17, 27-30.

Second, the ALJ discounted Plaintiff's testimony based on the medical record. AR 16-17. An ALJ is entitled to consider whether there is a lack of objective medical evidence to corroborate a claimant's subjective symptoms, so long as it is not the only reason for discounting the claimant's credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991). Here, the ALJ determined that objective medical records failed to identify any physical limitations consistent with Plaintiff's claim that he could not lift, carry, or stand very much, or work for very long with his right hand due to arthritis. AR 16. Specifically, the ALJ noted that the x-ray of Plaintiff's lumbar spine only showed straightening and the presence of a metallic foreign body was not of any clinical significance. AR 16, 152. The ALJ also referenced the consultative examiner's

findings that Plaintiff had normal coordination, normal sensation, and 5/5 motor strength. AR 16, 154-56. Additionally, the ALJ appropriately pointed out that while Plaintiff used a cane for ambulation, there was no evidence that this was prescribed by a treating physician and the consultative examiner expressly reported that Plaintiff did not require an assistive device. AR 16, 154.

Third, the ALJ discounted Plaintiff's testimony because of his non-compliance with treatment for diabetes. AR 17. A claimant's failure to follow prescribed treatment without adequate explanation is relevant to a credibility analysis. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). On more than one occasion, Plaintiff's treating physician noted that Plaintiff was not compliant with his diabetes treatment. AR 147-48, 185.

Fourth, and finally, the ALJ considered Plaintiff's conservative treatment as another reason to discredit his testimony. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The ALJ noted that Plaintiff's alleged arthritis, right arm limitations and back limitations were only being treated with medication and, more specifically, a 2009 statement showed he was prescribed only one medication to treat pain. AR 16, 216.

For the reasons stated, the Court finds that the ALJ's credibility determination is supported by substantial evidence and is free of legal error.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Larry Chang.

IT IS SO ORDERED.

    Dated:   **September 17, 2012**           /s/ *Dennis L. Beck*
                                               UNITED STATES MAGISTRATE JUDGE